**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Redwood Liquidating Co. | |
| Post-Effective Date Debtor. | Case No. 22-10621 (BLS) |
| Oxford Finance, LLC, | |
| Plaintiff,<br>v. | Adv. Pro. No. 25-51853 (BLS) |
| Redwood Liquidating Co., Jason Myers,<br>Dana Moss, and Harish Soundararajan, | |
| Defendants. | |

## **OPINION**

Oxford Finance LLC (the "Plaintiff" or "Oxford") filed an adversary complaint against

Redwood Liquidating Co. ("Redwood") and Jason Myers, Dana Moss, and Harish Soundararajan

(the "D&O Defendants" and, together with Redwood, the "Defendants").[1] As described in detail

below, Oxford contends that it owns certain valuable causes of action that Redwood has pursued,

and Oxford now seeks to recover from Redwood the proceeds that have resulted from the

settlement of litigation arising from those causes of action.

The adversary complaint alleges five causes of action: (I) declaratory judgment, (II)

breach of contract, (III) fraudulent concealment, (IV) conversion, and (V) negligent

---

[1] References to "D.I." refer to the main proceeding's docket (22-10621), and references to "Adv. D.I." refer to this proceeding's docket.

misrepresentation. All counts are asserted against Redwood and Counts III and V are also asserted against the D&O Defendants. Redwood has asserted a counterclaim against Oxford seeking confirmation that the Plan Administrator has the sole authority to settle valuable malpractice claims and distribute the proceeds arising therefrom.[2] Before the Court are Redwood's Motion to Dismiss, the D&O Defendants' Motion to Dismiss, Redwood's Counterclaim and Oxford's Motion to Dismiss the Counterclaim.[3] For the reasons that follow, the Motion to Dismiss filed by Redwood will be granted as to Counts I, II and IV. The Motions to Dismiss filed by Redwood and the D&O Defendants will also be granted as to Counts III and V.

## BACKGROUND

This adversary proceeding stems from the voluntary Chapter 11 petition filed by GenapSys, Inc. (the "Debtor" or "GenapSys"), Redwood's predecessor in interest, on July 11, 2022. The adversary proceeding seeks to recover proceeds arising from the settlement of malpractice claims brought by Redwood against GenapSys's former corporate counsel (the "Malpractice Claims").[4] In a nutshell, the Malpractice Claims allege that former counsel drafted defective corporate documents which led to serious prepetition governance disputes for GenapSys, including a determination in the Delaware Chancery Court that many of GenapSys's directors were not validly appointed.[5] GenapSys's Chapter 11 bankruptcy filing occurred

---

[2] D.I. 761.
[3] Pursuant to the Agreed Order Governing Consolidation, Procedure and Scheduling [Adv. D.I. 12], the *Motion of the Post-Effective Date Debtor for Entry of an Order (I) Enforcing (A) the Sale Order and Asset Purchase Agreement, and (B) the Confirmation Order and the Combined Disclosure Statement and Plan, (II) Finding that the Plan Administrator Has the Sole Power and Authority to Pursue and Settle Malpractice Claims, (III) Authorizing the Plan Administrator to Distribute the Settlement Proceeds, and (IV) Granting Related Relief* [D.I. 761] is deemed to constitute a counterclaim asserted by Redwood against Oxford in this adversary proceeding.
[4] Adv. D.I. 1 ¶ 1.
[5] D.I. 761. *See Esfandyarpour v. Zollars, Myers, Eliasson, McKenzie, Cecil, & GenapSys, Inc.*, No. 2022-0324-MTZ, 2022 WL 2666997, at *1, *2 (Del. Ch. July 8, 2022).

2

immediately after the Chancery Court issued its ruling that the board was not properly constituted.

In the Chapter 11 case, this Court approved a sale of substantially all the Debtor's assets to Sequencing Health, Inc. ("Sequencing") on September 12, 2022.[6] Oxford was the Debtor's prepetition senior secured lender with a lien on substantially all of the Debtor's assets.[7] Rather than have its lien attach to the sale proceeds as part of the sale transaction, Oxford agreed instead to have its debt assumed by Sequencing and to release all of its liens and claims on GenapSys's remaining assets.[8] Oxford thus became Sequencing's secured lender shortly after the Court-approved sale closed and had liens on substantially all of Sequencing's assets, including all assets that were purchased by Sequencing from GenapSys.[9]

On January 6, 2023, several months after the above sale closed, this Court entered the *Order Confirming the Debtor's Combined Disclosure Statement and Chapter 11 Plan of Liquidation* (the "Sale Order").[10] The Debtor's liquidating plan (hereinafter the "Plan") provided that all assets remaining in the estate after the sale to Sequencing would be administered by the Plan Administrator on a post-confirmation basis for the benefit of the Debtor's creditors and holders of certain preferred equity interests.[11] As noted above, Oxford had waived any claims against the estate as part of the sale to Sequencing and thus is not entitled to participate as a creditor in any distributions under the confirmed Plan. On January 13, 2023, the Plan went effective.[12]

---

[6] D.I. 243.
[7] Adv. D.I. 1 ¶ 13.
[8] *Id.*
[9] *Id.*
[10] D.I. 430.
[11] D.I. 430-1.
[12] D.I. 438.

3

In April 2023, Oxford sent Sequencing a Notice of Default, advising that Sequencing was in default under the Amended and Restated Loan and Security Agreement and Assumption Agreement (the "Loan Agreement") and explaining that it was entitled to exercise its rights and remedies as a secured creditor.[13] In August 2023, Oxford foreclosed on its collateral.[14] As a result, Sequencing conveyed substantially all its assets to Oxford, including the purchased assets that had formerly belonged to GenapSys.[15] According to the Complaint, Oxford believed that this included all assets of the Debtor with any material value.[16]

In June 2023, Redwood initiated a lawsuit against GenapSys's former corporate counsel in California Superior Court asserting the Malpractice Claims.[17] After nearly two years of litigation in California, the Debtor's former corporate counsel moved for summary judgment in that court on the basis that the Combined Disclosure Statement and Plan filed in the Chapter 11 case did not identify the Malpractice Claims with enough specificity.[18] In March 2025, the Plan Administrator filed the *Redwood Plan Administrator's Motion for an Order Clarifying Debtor's Combined Disclosure Statement and Plan* (hereinafter the "Clarification Motion") in this Court.[19] In the Clarification Motion, the Plan Administrator sought an order confirming that the Debtor's Malpractice Claims had indeed been adequately disclosed and preserved under the Plan for prosecution by the Plan Administrator.[20] Counsel to Sequencing and Oxford were each properly served with the Clarification Motion,[21] but neither filed any objection or response thereto. Former corporate counsel objected to the Clarification Motion, arguing again that the

---

[13] Adv. D.I. 1 ¶ 74.
[14] *Id.* ¶ 78.
[15] *Id.*
[16] *Id.* ¶ 45.
[17] *Id.* ¶ 15.
[18] D.I. 699.
[19] *Id.*
[20] *See id.*
[21] D.I. 699-7; D.I. 699-8.

Malpractice Claims had not been adequately disclosed in the approved Disclosure Statement and thus were effectively waived and expunged as a result of confirmation of the Debtor's Plan. Specifically, former counsel argued that applicable bankruptcy law obliged the Debtor to identify and describe the Malpractice Claims with particularity in the Disclosure Statement, and they contend the Debtor failed to do so.

In April 2025, the Court held an evidentiary hearing on the Clarification Motion, following which it took the matter under advisement.[22] In early May 2025, prior to any ruling by the Court on the Clarification Motion, Redwood announced that it had settled the Malpractice Claims with the Debtor's former corporate counsel in exchange for payment of certain amounts (the "Settlement Proceeds") to Redwood.[23]

On May 24, 2025, Oxford sent a letter to Redwood demanding that all of the Settlement Proceeds be turned over to Oxford.[24] Oxford alleges that the Settlement Proceeds are its property because they derive from the Malpractice Claims, which Oxford contends were sold to Sequencing, and importantly, remained subject to Oxford's liens that now extended to all of Sequencing's property.[25] Redwood refused this demand, and according to the Complaint, responded that GenapSys did not sell the Malpractice Claims to Sequencing through the APA, so that they remained property of the Debtor's post-confirmation estate to be administered under the Plan.[26] Oxford commenced this adversary proceeding on August 5, 2025.

## JURISDICTION AND VENUE

---

[22] *See* D.I. 721.
[23] *See* Adv. D.I. 1 ¶ 101; Adv. D.I. 21 at 10-11. As a result of the settlement, the Court never ruled on the Clarification Motion. By agreement between the parties, the amount of the Settlement Proceeds is confidential.
[24] Adv. D.I. 1 ¶ 106.
[25] *Id.* ¶ 1.
[26] *Id.* ¶¶ 2, 107.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157, as well as the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This is a "core proceeding" under 28 U.S.C. § 157(b)(2).

## **STANDARD OF REVIEW**

Under Rule 8(a)(2), pleadings must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[27] Rule 12(b)(6) allows a defendant to bring a motion to dismiss the claim for failing to meet this standard.[28] When deciding motions to dismiss under Rule 12(b)(6), the Court will "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."[29]

In *Bell Atlantic Corp. v. Twombly*, the Supreme Court instructed that to satisfy Rule 8(a)(2) a pleading must nudge claims "across the line from conceivable to plausible."[30] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[31] However, the Court need not and should not accept legal conclusions proffered as factual allegations.[32] Likewise, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient.[33]

---

[27] Fed. R. Civ. P. 8(a)(2).
[28] *See* Fed. R. Civ. P. 12(b)(6).
[29] *Crystallex Int'l Corp. v. Petróleos De Venezuela, S.A.*, 879 F.3d 79, 83 n.6 (3d Cir. 2018).
[30] *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[31] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).
[32] *See Twombly*, 550 U.S. at 555; *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) ("we disregard legal conclusions and 'recitals of the elements of a cause of action, supported by mere conclusory statements.'").
[33] *Giuliano v. Haskett (In re MCG Ltd. P'ship)*, 545 B.R. 74, 82 (Bankr. D. Del 2016). Conclusory allegations and bare legal conclusions receive no presumption of truth under *Iqbal* and *Twombly* and are "affirmatively disregard[ed]" by the district courts when passing on a motion to dismiss. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 790 (3d Cir.

To determine whether a claim meets the *Twombly/Iqbal* standard of pleading, a court must draw on its judicial experience and common sense.[34] The Third Circuit follows a three-step process to determine the sufficiency of a complaint:

> First, the court must "take note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."[35]

The movant bears the burden of showing that the dismissal is appropriate under Rule 12(b)(6).[36]

For claims based on alleged fraud, Rule 9(b)'s more rigorous particularity standard applies. Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."[37] Rule 9(b) is designed to provide notice of the precise misconduct with which defendants are charged and prevent false charges.[38] "Broad statements" and "generic references" to some fraud will not suffice because Rule 9(b) requires particularity for fraud claims to survive a motion to dismiss.[39] Satisfactory pleading will identify the who, what, when, where, and how of the "circumstances" surrounding the alleged

---

2016); *see also Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007) ("[A] court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss.").

[34] "[A] court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." *In re Zohar III, Corp.*, 639 B.R. 73, 90 (Bankr. D. Del.), *aff'd*, 620 F. Supp. 3d 147 (D. Del. 2022), *appeal dismissed sub nom. In re Zohar III, Corp.* (3d Cir. Nov. 10, 2022) (quoting *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405–06 (S.D.N.Y. 2001)).

[35] *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago*, 629 F.3d at 121, 130).

[36] *Paul v. Intel Corp. (In re Intel Corp. Microprocessor Antitrust Litig.)*, 496 F. Supp. 2d 404, 408 (D. Del. 2007).

[37] Fed. R. Civ. P. 9(b).

[38] *See Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984).

[39] *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

fraud.[40] "Where allegations of fraud are brought against multiple defendants, 'the complaint must plead with particularity . . . the specific allegations of fraud' applicable to each defendant."[41]

## THE PARTIES' POSITIONS

Oxford's position boils down to two theories for recovery, which are necessarily pled in the alternative: (A) the Malpractice Claims were sold to Sequencing pursuant to the sale approved by the Court; or alternatively, (B) if the Malpractice Claims were not actually sold to Sequencing, the Defendants fraudulently concealed and negligently misrepresented the existence and potential value of the Malpractice Claims. These arguments will be addressed in turn.

### A. Sale of the Malpractice Claims

The starting point for determining whether the Malpractice Claims were sold to Sequencing is the Asset Purchase Agreement (the "APA").[42] Oxford contends that the Malpractice Claims were "Purchased Assets" under the APA, while Redwood argues they were "Excluded Assets" that remained in the Debtor's estate. Because "Purchased Assets" includes all rights, properties and assets of the Debtor other than the "Excluded Assets," the Malpractice Claims must fall into one of the two categories.

Oxford argues that the Malpractice Claims must be a Purchased Asset because they do not fall into one of the enumerated exceptions defined as Excluded Assets. It is Oxford's position

---

[40] *See DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990); *Bigband Networks, Inc. v. Imagine Communications, Inc.*, No. 07-351-JJF, 2010 WL 2898286, at *3 (D. Del. July 20, 2010).

[41] *Baldonado v. Avrinmeritor, Inc.*, No. 13-833-SLR-CJB, 2014 WL 2116112, at *9 (D. Del. May 20, 2014) (quoting *MDNet, Inc. v. Pharmacia Corp.*, 147 F. App'x 239, 245 (3d Cir. 2005)).

[42] "In evaluating a motion to dismiss", the Court "may consider documents that are attached to or submitted with the complaint . . . matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (internal quotation marks omitted). The APA was attached to the adversary complaint filed by Oxford and referenced extensively therein. *See* Adv. D.I. 1-1. Accordingly, it is properly considered by the Court for purposes of the Motion to Dismiss.

that it was the intention of all parties to convey all the Debtor's valuable assets to Sequencing, so the Malpractice Claims must have been included in the transaction.

In the Motions to Dismiss, the Defendants provide two primary reasons why the Malpractice Claims are Excluded Assets under the APA. First, they argue that the Malpractice Claims relate to the engagement letter between GenapSys and its prior corporate counsel (hereinafter the "Engagement Letter"), which was not an "Assumed Contract." Second, they argue that the Malpractice Claims are Excluded Assets because they implicate attorney-client and work-product privileges, which are defined under the APA to be Excluded Assets. The Defendants further support their contention that the Malpractice Claims were Excluded Assets by noting that the sale of the Malpractice Claims would not have been permissible under applicable California law.

### B. Misrepresentation or Concealment of the Value and Existence of the Malpractice Claims

If in fact the Malpractice Claims were not sold to Sequencing under the APA, Oxford then contends that the Defendants negligently misrepresented or fraudulently concealed these assets because Oxford only released its liens on the belief that all assets of any value were being sold to Sequencing (and would thus remain subject to Oxford's liens). Defendants respond as a threshold matter that the Counts alleging fraud have not been pled with particularity as required under Fed. R. Bankr. P. 7009(b). They then advance numerous other theories why the claims fail, including that the Court's findings in the Sale Order preclude the claims, the release provisions in the Plan foreclose Oxford from bringing the claims, Oxford is unable to bring the claims because it was not a party to the Asset Purchase Agreement, and that Oxford has waived its ability to bring the claims.

### DISCUSSION

Redwood has moved to dismiss Counts I-V, and the D&O Defendants have moved to dismiss Counts III and V. Counts I, II, and IV all rely on the same theory and will be addressed together. The Court will then turn to Counts III and V.

### A. Claims Premised on the Sale of the Malpractice Claims

Counts I (Declaratory Judgment), II (Breach of Contract), and IV (Conversion) rise or fall on the threshold issue of whether the Malpractice Claims were sold to Sequencing. On September 12, 2022, this Court entered the Sale Order approving the APA and authorizing the sale of certain of the Debtor's assets to Sequencing.[43] In the APA, Section 2.1 states that the Debtor would "sell, convey, assign, transfer and deliver to [Sequencing] the 'Purchased Assets,'" which was defined to include "all rights, properties and assets of Seller, real, personal or mixed, tangible or intangible, of every kind and description, except for the Excluded Assets."[44] The "Excluded Assets" are defined in turn as assets that were "retained by [the Debtor]" and which were "not being sold or assigned to [Sequencing]."[45] Importantly for our discussion, the Excluded Assets include (i) "all Contracts that are not Assumed Contracts", (ii) "rights, claims . . . or causes of action of [Debtor], solely to the extent relating to any Excluded Asset", and (iii) "attorney-client and work-product privileges."[46]

Redwood first argues that the Malpractice Claims are an Excluded Asset because they relate to an Excluded Asset, the Engagement Letter with former corporate counsel. Redwood claims the Engagement Letter is an Excluded Asset because it is not an Assumed Contract.

---

[43] D.I. 243.
[44] D.I. 243-1.
[45] *Id.*
[46] *Id.*

10

Schedule 2.5(a) and Section 2.5 of the APA provide an exclusive list of the contracts that Sequencing intended to assume.[47] The Engagement Letter with the Debtor's former corporate counsel is not included in that Schedule. Therefore, the Engagement Letter is not an Assumed Contract.[48]

Oxford contends that the Malpractice Claims do not relate to the Engagement Letter because under California law, claims for legal malpractice may exist separately from any written agreement.[49] Oxford's argument fails to recognize that two things can be true at once. The Malpractice Claims might exist separately from the Engagement Letter, but that does not mean the two are unrelated. Even if the Malpractice Claims sound in tort rather than breach of contract, the attorney-client relationship established by the Engagement Letter is an essential element of the malpractice claim.[50] This alone provides a sufficient connection to establish that the Malpractice Claims relate to the Engagement Letter.

The conclusion that the Malpractice Claims were not transferred to Sequencing is supported by a review of California law,[51] which generally prohibits the sale or transfer of legal malpractice claims.[52] Oxford relies on a narrow exception to this general rule which was first

---

[47] D.I. 243-1; D.I. 243-2.

[48] Oxford argues that the Engagement Letter cannot be an Assumed Contract or an Excluded Asset under the APA because it is not even a "Contract" under the terms of the APA. The APA specifies that "Contract" refers only to those agreements that are "legally binding." Oxford contends that the Engagement Letter is not legally binding because the representation of the Debtor by its former corporate counsel terminated in 2021. This argument is unavailing. Termination of a contract does not equal rescission, and it does not mean that the contract is no longer binding. Courts regularly enforce contractual provisions in contracts that have been terminated. *See, e.g., Rissi v. T-Mobile USA, Inc.,* 762 F.Supp. 3d 959, 974-75 (S.D. Cal. 2025) (enforcing arbitration provision in employment agreement following termination of employment relationship).

[49] Adv. D.I. 37.

[50] *Slovensky v. Friedman,* 49 Cal. Rptr. 3d 60, 67 (Cal. Ct. App. 2006).

[51] This conclusion is similarly supported by a review of the Plan, which establishes that "Retained Causes of Action" includes "any and all Causes of Action identified in the Debtor's schedules, including, but not limited to, any malpractice claims[.]" Adv. D.I. 21. The Plan Supplement containing this language was filed in December 2022 and was not objected to by Oxford. *See* D.I. 398.

[52] *White Mountains Reinsurance Co. of Am. v. Borton Petrini, LLP,* 164 Cal. Rptr. 3d 912, 917 (Cal. Ct. App. 2013) ("Since *Goodley* was decided in 1976, California courts have consistently adhered to the *Goodley* court's conclusion that a cause of action for legal malpractice is not assignable for public policy reasons.").

11

recognized by the California Court of Appeal in *White Mountains Reinsurance Co. of America v. Borton Petrini, LLP*.[53] In *White Mountains*, the California Court of Appeal laid out five factors it considered in deciding to diverge from prior case law in the state and permit a sale of a cause of action.[54] Specifically, the court stated that a legal malpractice claim may be transferable when:

> (1) [T]he assignment of the legal malpractice claim is only a small, incidental part of a larger commercial transfer between insurance companies; (2) the larger transfer is of assets, rights, obligations, and liabilities and does not treat the legal malpractice claim as a distinct commodity; (3) the transfer is not to a former adversary; (4) the legal malpractice claim arose under circumstances where the original client insurance company retained the attorney to represent and defend an insured; and (5) the communications between the attorney and the original client insurance company were conducted via a third party claims administrator.[55]

The California Court of Appeal explained that with the above circumstances present, "[t]he transfer did not treat the legal malpractice claim as a distinct commodity and did not create a market for such claims."[56] As such, the public policy underlying California's long-standing rule was not offended by carving out a narrow exception.[57]

The *White Mountains* exception plainly does not apply here, where neither Redwood nor Sequencing were insurance companies. However, Oxford also points to a recent instance where a California court upheld the transfer of malpractice claims outside the insurance context.[58]

In *Allan v. Pope*, the plaintiff, Ken Roberts, sued his former legal counsel for professional negligence arising from his representation in a lawsuit involving royalty rights to music.[59] While

---

[53] *Id.* at 913.

[54] *Id.*

[55] *Id.*

[56] *Id.* at 926.

[57] *Id.*

[58] *See Allan v. Pope*, No. B311491, 2022 WL 4652724, at *7 (Cal. Ct. App. Sept. 29, 2022). Notably, *Allan v. Pope* is an unpublished opinion and would not serve as persuasive authority in a California state court. *See* Cal. Rules of Court 8.1115(a). Oxford also cites *Engel v. Pech* for this same proposition, but the court in *Pech* declined to allow a transfer of malpractice claims from a limited liability partnership to an individual partner of that same partnership. *Engel v. Pech*, 314 Cal. Rptr. 3d 176, 189 (Cal. Ct. App. 2023).

[59] *Pope*, 2022 WL 4652724, at *1.

12

the lawsuit was pending, Roberts created a trust, for which he was the sole trustee, and transferred his rights to the malpractice action into the trust.[60] During the pendency of the lawsuit, Roberts died, and the trust assets were distributed to his life partner, Virginia Pope, who took his place in pursuing the malpractice action.[61] Roberts' former legal counsel contested this transfer, asserting that Pope did not have standing to continue the suit because the transfer of the rights to the malpractice action into the trust violated California law.[62] The California Court of Appeal held that the transfer of the malpractice claim into the trust did not violate California's rule prohibiting the assignment of malpractice actions.[63]

The *Pope* court's decision to permit the transfer of malpractice claims was limited to the "narrow circumstances of [that] case" because the transfer of the malpractice claim "did not alter the ownership of the claim, commodify the claim, or undermine the attorney-client relationship."[64] Based on those circumstances, the court in *Pope* concluded that transfer of the claim did not implicate the public policy concerns underpinning the general nonassignability rule followed by California courts.[65]

Similar circumstances do not exist in the present case. Rather, the principles underlying California's prohibition on the sale of malpractice claims would appear to apply directly in the context of a transaction between the Debtor and Sequencing. As a practical matter, it appears that the Malpractice Claims were highly valuable assets (and thus would not have been incidental to the APA), and Sequencing was a separate entity to GenapSys (unlike the trust in *Pope* which was "not an entity separate from its trustee").[66]

---

[60] *Id.*
[61] *Id.*
[62] *Id.*
[63] *Id.*
[64] *Id.* at *8.
[65] *Id.* at *12.
[66] *Id.* at *7.

13

Because the Malpractice Claims were not transferred to Sequencing, Oxford retained no right or interest in the Malpractice Claims after the closing of the sale to Sequencing. Instead, those assets remained with the Debtor's estate. Accordingly, Counts I, II, and IV are dismissed for failure to state a claim upon which relief can be granted.

**B. Claims for Fraud and Negligence**

In Counts III and V, Oxford asserts claims for fraudulent concealment and negligent misrepresentation. Count III asserts that the Defendants fraudulently concealed the existence and value of the Malpractice Claims while representing to Oxford that GenapSys would not retain any assets of value. Count V alleges the Defendants made material misrepresentations to Oxford concerning the assets that would be sold pursuant to the APA. According to Oxford, the parties' intent was to sell all material assets to Sequencing through the APA, and by retaining the Malpractice Claims, the Defendants misrepresented what was being sold.

The Defendants first argue that the heightened pleading standard of Rule 9(b) applies and is not satisfied. The Rule 9(b) standard replaces the "short and plain statement" standard of Rule 8(a) when pleadings make claims based on fraud.[67] "Rule 9(b) is expressly limited to allegations of 'fraud or mistake.'"[68] Courts in the Third Circuit have extended the Rule 9(b) heightened pleading standard to negligent misrepresentation claims when those claims "sound in fraud."[69] Accordingly, the Rule 9(b) standard will apply to Oxford's negligent misrepresentation claims if they "sound in fraud," irrespective of the label given to them in the complaint.

---

[67] Fed. R. Civ. P. 8(a)(2).
[68] *Petersen v Allstate Indem. Co.*, 281 F.R.D. 413, 417 (C.D. Cal. 2012) (quoting Fed. R. Civ. P. 9(b)).
[69] *See Cavi v. Evolving Systems NC, Inc.*, No. 15-1211-RGA, 2018 WL 2372673, at *2 (D. Del. May 24, 2018); *Travelers Indem. Co. v. Cephalon, Inc.*, 620 F. App'x 82, 85 n.3 (3d Cir. 2015) (affirming Rule 9(b) dismissal of claims for intentional misrepresentation, negligent misrepresentation, and unjust enrichment); *Zuniga v. Am. Home Mortgage*, No. 14-CV-2973(KM), 2016 WL 6647932, at *2–3 (D.N.J. Nov. 8, 2016).

Here, Oxford does not allege that the Defendants inadvertently lied or accidentally failed to disclose the value or existence of the Malpractice Claims. Throughout the Complaint, Oxford alleges that the Defendants knew the value of the Malpractice Claims but concealed or misrepresented their actual value because they stood to gain from their retention.[70] Oxford's allegations sound in fraud, not negligence, so they must be pleaded with the particularity required by Rule 9(b). To satisfy Rule 9(b), Oxford's pleadings must establish the "who, what, where, when, how, and why" of the alleged fraud.[71]

The Defendants argue that Oxford's claims were not pleaded with the requisite particularity because Oxford fails to identify any specific statements, who made them, when they were made, or to whom they were made.[72] They argue that such group pleading fails to satisfy the heightened Rule 9(b) standard because it leaves the individual defendants and the Court to guess who did what to whom and when.

The Court agrees. The Complaint fails to allege specific conduct or statements by any of the Defendants. In each instance, the Complaint refers to the Defendants collectively and describes the conduct only vaguely. For example, the Complaint states "none of Redwood, Myers, Moss, or Soundararajan disclosed the existence or value of those claims to Oxford",[73] "Myers, Moss, and Soundararajan permitted, enabled, or caused GenapSys to make misrepresentations or omissions to Oxford",[74] and "Redwood, Myers, Moss, and Soundararajan made material misrepresentations concerning the assets that would be sold pursuant to the Asset Purchase Agreement and those that would be retained by GenapSys".[75] With such general

---

[70] Adv. D.I. 1 ¶ 47, 48, 52, 96.
[71] *In re Chicken Soup for the Soul Entertainment, Inc.*, No. 24-11442(MFW), 2025 WL 3533003, at *3 (Bankr. D. Del. Dec. 9, 2025).
[72] Adv. D.I. 21 at 32; Adv. D.I. 30 at 29-32.
[73] Adv. D.I. 1 ¶ 130.
[74] *Id.* ¶ 131.
[75] *Id.* ¶ 144.

accusations it is impossible for the individual Defendants to know which allegations apply to them. Accordingly, the Court will grant the Motions to Dismiss as to the negligent misrepresentation claims.

As to the fraudulent concealment claims, Oxford argues the Rule 9(b) pleading standard should be relaxed because "a plaintiff in a fraud by omission suit will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim."[76] The Defendants respond by noting that courts have only relaxed Rule 9(b)'s requirements "when factual information is peculiarly within the defendant's knowledge and control."[77] The Defendants additionally argue Oxford improperly recharacterizes its claims as omission claims instead of misrepresentation claims to benefit from a relaxed pleading standard, and, even if these were omissions claims, Oxford has failed to sufficiently allege a duty to disclose.

For fraud-by-omission claims where the fraud alleged is the omission of information within a defendant's exclusive control, Delaware courts have relaxed Rule 9(b)'s standard, but it is still more exacting on plaintiffs than the plain statement standard of Rule 8(a). When proceeding under a fraud-by-omission theory, a plaintiff may not be required to plead the details of their allegations with the same level of specificity as would a plaintiff bringing a false representation claim.[78] Again, Plaintiffs must satisfy Rule 9(b) by pleading "the who, what, when, where, and how of the alleged omission."[79] Specifically, a fraud-by-omission plaintiff must allege "(1) precisely what was omitted; (2) who should have made a representation; (3) the

---

[76] Adv. D.I. 37 (quoting *Robinson v. Gen. Motors LLC*, No. 20-663-RGA-SRF, 2021 WL 3036353, at *4 (D. Del. July 19, 2021), *report and recommendation adopted*, No. 1:20-CV-00663, 2021 WL 7209365 (D. Del. Nov. 30, 2021)).
[77] *Robinson*, 2021 WL 3036353, at *4.
[78] *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1098 (N.D. Cal. 2007).
[79] *Robinson*, 2021 WL 3036353, at *4 (internal quotation marks omitted).

16

content of the alleged omission and the manner in which the omission was misleading; and (4) what [defendant] obtained as a consequence of the alleged fraud."[80]

To successfully plead omission-based claims in an arms' length transaction, there must be an affirmative duty to speak.[81] Such a duty arises "where there is a fiduciary or other similar relation of trust and confidence between the parties."[82] This means there is no duty to disclose material facts absent a special relationship.[83] However, a duty to disclose may also arise through partial disclosures. When a party to arms' length negotiations decides to speak, it cannot lie.[84] And when that party speaks, "it also cannot do so partially or obliquely such that what the party conveys becomes misleading."[85] "A duty to disclose arises where a defendant makes 'an inaccurate, incomplete or misleading prior disclosure.'"[86] Put another way, when a party speaks on a matter, it has a duty to make a full and fair disclosure as to that matter.[87]

Before reaching the merits and defenses peculiar to omission-based claims, it is critical to ask: Do we have a true omission-based claim? Courts have cautioned against accepting labels within complaints because artful pleading can easily recast misrepresentations as omissions.[88] In many instances where one party has misrepresented a material fact it could easily be said that the true material facts were omitted. Therefore, the Court must assess the allegations contained in the

---

[80] *Id.* (quoting *Miller v. Gen. Motors, LLC*, No. 17-CV-14032, 2018 WL 2740240, at *11 (E.D. Mich. June 7, 2018)).

[81] *Airborne Health, Inc. v. Squid Soap, LP*, No. 4410-VCL, 2010 WL 2836391, at *9 (Del. Ch. July 20, 2010).

[82] *Prairie Capital III, L.P. v. Double E Holding Corp.*, 132 A.3d 35, 52 (Del. Ch. 2015).

[83] *Id.*

[84] *Id.*

[85] *Id.*

[86] *SLF Holdings, LLC v. Uniti Fiber Holdings, Inc.*, 499 F. Supp. 3d 49, 60 (D. Del. 2020) (quoting *Oran v. Stafford*, 226 F.3d 275, 285-86 (3d Cir. 2000)).

[87] *Corporate Property Associates 14 Inc. v. CHR Holding Corp.*, No. 3231-VCS, 2008 WL 963048, at *6 (Del. Ch. April 10, 2008).

[88] *See, e.g.*, *Joseph v. Wiles*, 223 F.3d 1155, 1162 (10th Cir. 2000); *Wilson v. Comtech Telecomm. Corp.*, 648 F.2d 88, 93 (2d Cir. 1981).

complaint to determine whether the offenses should be characterized as omissions or misrepresentations.

The central thrust of Oxford's allegations here is that Oxford released its liens and claims on GenapSys's assets only "on the basis of Defendants' representations that any and every asset of any value was to be sold and assigned to Sequencing, and that no assets with any value would be left behind."[89] These allegations can easily be framed in two ways: (1) Defendants misrepresented that all assets of value would be transferred to Sequencing because Defendants retained, or intended to retain, the Malpractice Claims; or (2) Defendants failed to disclose the existence of the Malpractice Claims which were an asset of material value.

In the Court's view, the former approach, framing this as a misrepresentation, is the correct one. Anytime there is a transaction and one party does not receive what it believes it was owed, it could argue that the missing aspect makes it an omission claim. But looking at the transaction as a whole, it is more properly viewed under a misrepresentation theory. Oxford's decision to release its liens was based on representations that it was obtaining new liens on all valuable assets. Now, Oxford contends that is not what it received. The fundamental issue is that Oxford, based on certain negotiations, believed it was receiving one thing, and now Oxford does not believe that it received what it had bargained for. Accordingly, this is best viewed as a misrepresentation claim.

Oxford's negligent misrepresentation and fraudulent concealment claims are effectively the same claim with two different labels.[90] For the same reasons the negligent misrepresentation

---

[89] Adv D.I. 1 ¶ 13.
[90] Because Oxford uses the same allegations to support both its fraudulent concealment and negligent misrepresentation claims, they suffer from the same deficiencies.

18

claim fails to meet the heightened Rule 9(b) pleading standard, so too does the fraudulent concealment claim.

For the reasons stated above, the Court will grant the Motions to Dismiss filed by Redwood and the D&O Defendants as to Counts III and V. If Oxford wishes, it may request leave to amend its complaint.

## CONCLUSION

For the foregoing reasons, the Court will grant the Defendants' Motions to Dismiss without prejudice and deny Redwood's Counterclaim as moot. An appropriate Order follows.

Dated: June 18, 2026
Wilmington, Delaware

_____
BRENDAN LINEHAN SHANNON
UNITED STATES BANKRUPTCY JUDGE